# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Cathi Kandle

**DEFENDANTS**
Main Line Healthcare Group, Inc.

**(b)** County of Residence of First Listed Plaintiff   Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Garen Meguerian
Garen Meguerian, Attorney at Law, LLC
21 Industrial Blvd., Suite 201,
Paoli, PA 19301

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | **PERSONAL INJURY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 535 Death Penalty | **IMMIGRATION** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | **Other:** | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC 621; 42 USC 12112
Brief description of cause:
Plaintiff alleges that her employment was terminated unlawfully on the basis of her age and perceived disability.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 150,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
01/11/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: _807 Rexton Dr., West Chester, PA 19380_

Address of Defendant: _2 Industrial Blvd., Suite 400, Paoli, PA 19301_

Place of Accident, Incident or Transaction: _Lankenau Hospital, Wynnewood, PA_
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☐  No☒

Does this case involve multidistrict litigation possibilities?        Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _GarenMeguerian_, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _January 11, 2016_        Garen Meguerian        _78588_
                                   Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _January 11, 2016_        Garen Meguerian        _78588_
                                   Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 807 Rexton Dr., West Chester, PA 19380

Address of Defendant: 2 Industrial Blvd., Suite 400, Paoli, PA 19301

Place of Accident, Incident or Transaction: Lankenau Hospital, Wynnewood, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
     (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, GarenMeguerian _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: January 11, 2016    Garen Meguerian                78588
                          Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: January 11, 2016    Garen Meguerian                78588
                          Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Cathi Kandle | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Main Line Healthcare Group, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (X )

| | | |
|---|---|---|
| 1/11/16 | Garen Meguerian | Plaintiff Cathi Kandle |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610.590.2176 | 480.247.5804 | gm@garenmlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Cathi Kandle | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Main Line Healthcare Group, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.           ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                         ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                            ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X )


| | | |
|---|---|---|
| 1/11/16 | Garen Meguerian | Plaintiff Cathi Kandle |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610.590.2176 | 480.247.5804 | gm@garenmlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)　　　　The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)　　　　In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)　　　　The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)　　　　Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)　　　　Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
## (See §1.02 (e) Management Track Definitions of the
## Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHI KANDLE** | : | |
| **807 Rexton Dr.** | : | |
| **West Chester, PA 19380** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | **NO._____** |
| v. | : | |
| | : | |
| **MAIN LINE HEALTHCARE** | : | |
| **GROUP, INC. d/b/a MAIN LINE** | : | |
| **HEALTHCARE, MAIN LINE** | : | |
| **MAIN LINE HOSPITALS, and** | : | **JURY TRIAL DEMANDED** |
| **LANKENAU HOSPITAL** | : | |
| **2 Industrial Blvd., Suite 400** | : | |
| **Paoli, PA 19301** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff Cathi Kandle, by way of Complaint against Defendant Main Line Healthcare

Group, Inc. d/b/a "Main Line Healthcare", "Main Line Hospitals, Inc.", and, "Lankenau

Hospital" ("MLH" or "Defendant"), hereby states:

## INTRODUCTION

1.     Ms. Kandle brings this action to redress MLH's violation of the Age

Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§621, *et seq.*), the Americans with

Disabilities Act ("ADA" – 42 U.S.C. §12112, *et seq.*), and, the Pennsylvania Human Relations

Act ("PHRA" – 43 P.S. §951, *et seq.*).  As a direct consequence of Defendant's unlawful actions,

Plaintiff seeks damages as set forth herein.

## JURISDICTION

2.     This action is brought under the ADEA, ADA, and the PHRA.

3.     This Court's jurisdiction over Plaintiff's ADEA and ADA claims is based on 29

1

U.S.C. §626(c) and 28 U.S.C. §1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

4.   Plaintiff seeks relief for her ADEA and ADA claims pursuant to 29 U.S.C. §626(b) and (c)(1).

5.   This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. §1367(a).

## VENUE

6.   Venue lies in the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. §1391(b) and (c).

## NATURE OF THE PROCEEDING

7.   This is a proceeding for damages related to the unlawful termination of Plaintiff's employment.

8.   Plaintiff seeks redress for her losses, including: (a) back pay; (b) front pay; (c) liquidated damages; (d) declaratory and injunctive relief, requiring, *inter alia*, that Defendant reinstate the Plaintiff; (e) lost benefits; (f) compensatory damages under applicable state law; (g) reasonable attorney's fees and costs; and (h) such other relief as may be necessary to secure to the Plaintiff the right hereafter to be free of employment discrimination on account of age, disability or perceived disability.

## PARTIES

9.   Defendant MLH is a Business Corporation organized and existing under the laws of Delaware, with places of business in Pennsylvania, including: at Lankenau Hospital, in Wynnewood, PA; Bryn Mawr Hospital, in Bryn Mawr, PA; and Paoli Hospital, in Paoli, PA.

10.   Defendant MLH was Plaintiff's employer until March 28, 2014, when MLH

terminated Plaintiff's employment.

11.     Plaintiff is an adult individual and lives in West Chester, Pennsylvania.

12.     Plaintiff's date of birth is October 30, 1950; at the time that MLH terminated her employment, Plaintiff's age was 63.

## FACTUAL BACKGROUND

13.     Prior to the termination of her employment by MLH, Ms. Kandle had worked at Lankenau Hospital for approximately 30 years, in various roles throughout her career.

14.     Ms. Kandle was employed by MLH, at Lankenau, from January 1, 2010 until March 27, 2014; Ms. Kandle had been employed with Defendant's predecessor (Cardiovascular Associates of Southeastern PA "CASEP") since April 2009.

15.     MLH acquired CASEP during Ms. Kandle's employment with that group.

16.     Until the termination of her employment by MLH, Plaintiff's formal job title was "surgery scheduler."

17.     In 2013, her last full year of employment at Lankenau, Plaintiff's wages, as reported on her Form W-2 Wage and Tax Statement, equaled $41,780.93.

18.     Ms. Kandle was qualified for the job of "surgery scheduler."

19.     Ms. Kandle had performed the job of "surgery scheduler" for many years and had received positive performance evaluations, including an assessment that she was a "top performer" who "consistently exceeds expectations in terms of quality of work" and "always produces accurate results."

20.     Ms. Kandle was credited with "consistently behav[ing] in a professional manner and maintain[ing] the standards of MLH."

21.     Ms. Kandle was assessed to be "an independent worker who is very well liked by

both her peers and the physicians.  She does not get involved in office politics and is always

willing to help out in all areas of the office.  She is a definite asset to MLH."

24. 22.    Ms. Kandle was regarded as highly credible by her supervisors: "Cathi tells the

truth unless doing so would jeopardize someone else's safety or privacy.  She tells the truth

about her behavior, motives or belief unless doing so would clearly be inappropriate due to the

audience or the surroundings."

24. 23.    Ms. Kandle was also credited for her willingness to accommodate the needs of her

employer: "Cathi is very flexible, with excellent ability to handle change with minimal

disruption.  She always displays an excellent attitude toward change."

24.    Given that Ms. Kandle was working to schedule surgeries for cardiac patients,

empathy towards those patients' needs was of paramount importance, and Ms. Kandle was

praised for her interactions with patients: "[t]he patients really like Cathi.  She listens to them

and helps them find answers to their questions.  The physicians know they can depend on her to

do a thorough job."

25.    Ms. Kandle's performance evaluations included positive assessments of her

contributions, including that she is "very kind and understanding with the patients and is very

sensitive to their needs."

26.    On or about August 29, 2013, MLH informed Plaintiff that it was restructuring

Plaintiff's job functions, and, starting on September 1, 2013, she would be moved from the

offices of the physicians with whom she had worked for many years, and into the "LMC Heart

Group / Access Center."

27.    Ms. Kandle would be working in a call center and answering calls from any

patients that called any one of 36 cardiologists, including electro-physiologists and cardiac

4

surgeons.

28.     Ms. Kandle had never met or interacted with most of these physicians.

29.     She had no experience in working for them and did not have any knowledge of their office procedures or how they scheduled patients.

30.     In her prior role as a "surgery scheduler", Ms. Kandle had worked closely with the cardiologists located in Suite 356 of the Lankenau Medical Building, scheduling both invasive and non-invasive procedures.

31.     MLH deliberately misled Ms. Kandle by maintaining her job title as "surgery scheduler" – even though Ms. Kandle's job would no longer involve scheduling surgeries.

32.     Upon initially entering the call center, Ms. Kandle was placed at a desk with a telephone connected to a headset, which she was expected to wear while answering calls eight hours / day.

33.     Despite the fact that Ms. Kandle had not, during her entire career, answered calls from random patients, MLH failed to provide any training to Ms. Kandle when it first moved her into the call center.

34.     MLH had also apparently failed to fully advise the physicians of the impact of moving their schedulers into the call center, as many of these physicians expressed their disappointment and frustration at the move, including to Ms. Kandle.

35.     Some physicians went so far as to apologize to patients for being directed to the call center, and formally complained to MLH about the new organization.

36.     Many patients, spurred by MLH physicians, began refusing to speak with the employees in the call center and demanded to be connected with their physicians' offices.

37.     MLH directed Ms. Kandle to lie to patients who called into the call center,

5

looking for their specific physicians' offices.

38.     Ms. Kandle was told to give patients the impression that they had reached their doctors' offices.

39.     After enduring months of complaints by patients, MLH advised Ms. Kandle and other call center employees to state that they were working for all physicians, but were simply housed in a different location.

40.     Patients reacted very negatively to this, and some patients disparaged Ms. Kandle and other call center employees by referring to them as "K-Mart operators", or "customer service center" employees.

41.     Although Plaintiff's job title remained "surgery scheduler", from the time of her move into the call center until the termination of her employment, Plaintiff was not asked to schedule a single surgical procedure.

42.     Instead, Plaintiff was asked to endure an environment of hostility, where it soon became evident to Plaintiff that MLH intended to terminate her employment because of her age, and was looking for any justification to do so.

43.     Upon her move to the call center, Ms. Kandle reported to a new manager, Kimberly Ellis.

44.     In one of her first interactions with Ms. Kandle, Ms. Ellis asked Plaintiff if she planned on retiring soon.

45.     Ms. Ellis also directed Ms. Kandle to lie to patients about not being in the call center, and when Ms. Kandle initially refused, Ms. Ellis criticized Ms. Kandle stating that she "was not creating the magic in MLH."

46.     To force Ms. Kandle to quit, MLH changed the rules and procedures seemingly

6

without rhyme or reason, and criticized Ms. Kandle for not adhering to these rules.

47.     Ms. Ellis also began to "paper" Ms. Kandle's employment file with alleged infractions of MLH's policies, again, as a means of giving false justification for the eventual termination of Ms. Kandle's employment.

48.     To make matters worse, the call center was located in a room without adequate ventilation, and Ms. Kandle – along with numerous other workers in the call center – began experiencing health issues.

49.     Ms. Kandle began to suffer from serious upper respiratory infections, and, as a result, Ms. Kandle complained to MLH, through her direct supervisor Ms. Ellis, about the safety of the environment in the call center.

50.     MLH retained an outside consultant whose first name is "Irene" to address issues raised by Ms. Kandle and other workers at the call center.

51.     Irene interviewed Ms. Kandle, and rather than taking Plaintiff's concerns seriously, she dismissed them, and came to the incorrect conclusion that Ms. Kandle was suffering from Chronic Obstructive Pulmonary Disease (COPD).

52.     Irene confronted Ms. Kandle and essentially blamed Ms. Kandle, rather than the unsafe environment, for her health issues.

53.     After the interview with the outside consultant, Ms. Kandle reported her concerns to Ms. Ellis, including Irene's dismissive attitude and her conclusion that Ms. Kandle was suffering from COPD.

54.     Unfortunately, Ms. Ellis was equally dismissive of Ms. Kandle's complaints.

55.     Since being moved into the call center, Ms. Kandle had sought medical treatment for her upper respiratory infection, and was advised by her physician that MLH should clean the

air ducts in the call center.

56.     Ms. Kandle, who had just returned from her doctor's appointment, reported her physician's recommendation to Ms. Ellis, and, once again, Ms. Ellis was dismissive of Ms. Kandle.

57.     Within several weeks of Ms. Kandle's report to Ms. Ellis, MLH terminated Ms. Kandle's employment.

58.     Ms. Kandle's employment was terminated on March 28, 2014.

59.     The reason for termination was pretextual.

60.     Ms. Ellis had criticized Ms. Kandle for using a form of transmission also used by Ms. Kandle's co-workers.

61.     Neither Ms. Kandle nor her co-workers were ever trained that this method was improper, yet Ms. Ellis singled Ms. Kandle out for criticism.

62.     When Ms. Kandle complained to Ms. Ellis that she felt that Ms. Ellis was singling her out for criticism, Mr. Ellis responded by threatening Ms. Kandle's job: "Cathi, if you bring this up to me again, you will be terminated."

63.     Ms. Kandle was terminated the following day.

64.     Ms. Kandle would have been eligible for a pension had she remained employed until June 2014.

65.     Upon information and belief, Ms. Kandle's position remained available and MLH filled the position with someone substantially younger than Plaintiff.

66.     The reasons provided by MLH for the termination of Plaintiff's employment are false and pretextual, and Ms. Kandle was advised by physicians at MLH to "**not** let this go."

67.     Respondent terminated Plaintiff because of her age.

68.     Respondent terminated Plaintiff because it perceived Plaintiff to be suffering from a disability, specifically COPD.

69.     On or about July 8, 2014, within the time prescribed by 29 U.S.C. §626(d) of the ADEA, Plaintiff filed her Charge of Discrimination with the EEOC against the Defendant.

70.     The Charge was dual filed with the Pennsylvania Human Relations Commission.

71.     The EEOC initially misplaced the Charge, and did not locate it for processing until April 2015, when it incorrectly noted that the Charge was received on April 13, 2015, instead of July 8, 2014.

72.     The EEOC subsequently corrected its error.

73.     On or about September 15, 2015, Plaintiff submitted an amended Charge, simply to correct the name of the Defendant, which had been incorrectly identified in the original Charge.

74.     The amended Charge correcting the name of the Defendant was accepted by the EEOC.

75.     The EEOC issued a "right to sue" letter to Plaintiff on November 12, 2015.

76.     Plaintiff has exhausted her administrative remedies, and has promptly initiated her lawsuit in this Court.

## COUNT I
### Violation of the Age Discrimination in Employment Act

77.     Plaintiff incorporates the preceding paragraphs of her complaint as though fully set forth herein at length.

78.     Commencing on or about August 2013 and continuing until March 28, 2014, Defendant MLH intentionally and willfully engaged in a pattern and practice of unlawful acts in violation of the ADEA. These practices were part of a systematic and concerted effort to

9

gradually rid itself of the obligations to pay health and retirement benefits for older employees, and to replace its older workers, including its surgery schedulers like Ms. Kandle, with younger employees.

79.     At all relevant times hereto, Plaintiff has been above the age of 40 and is a member of a protected class under the ADEA.

80.     Plaintiff was qualified to continue working for MLH.

81.     Upon information and belief, MLH's restructuring of the jobs of its surgery schedulers reflected, in both purpose and effect, a blatant and willful pattern of age discrimination.

82.     MLH engaged in an ongoing pattern and practice of age discrimination, beginning with the restructuring of Plaintiff's job functions and ending in the termination of Plaintiff's employment.

83.     As a result of MLH's policies and practices, Plaintiff suffered adverse consequences and was unjustly and discriminatorily deprived of equal employment opportunities because of her age.

84.     MLH retaliated against Ms. Kandle when Ms. Kandle complained about disparate treatment, including by terminating Plaintiff's employment.

85.     As a further result of MLH's actions, Plaintiff has been and will be deprived of income in the form of wages, health and dental insurance benefits, pension and retirement benefits, social security benefits, disability and life insurance benefits, paid holiday and vacation benefits, workers' compensation and unemployment compensation benefits, and other benefits, promotion opportunities and job assignments earned by the Plaintiff, but denied because of her age in amounts to be proven at trial.

86.   Plaintiff is now suffering, and will continue to suffer, irreparable injury from MLH's policies and practices as set forth herein.

## COUNT II
### Violation of the Americans with Disabilities Act

87.   Plaintiff incorporates the preceding paragraphs of her Complaint as though fully set forth herein at length.

88.   MLH terminated Plaintiff's employment because it perceived Plaintiff to be suffering from a disability – COPD.

89.   MLH believed, wrongly, that Plaintiff suffered from a physical impairment that is not transitory and minor.

90.   MLH retaliated against Plaintiff when Plaintiff complained of disparate treatment, including by terminating Plaintiff's employment.

91.   As a result of MLH's policies and practices, Plaintiff suffered adverse consequences and was unjustly and discriminatorily deprived of equal employment opportunities because of her perceived disability.

92.   As a further result of MLH's actions, Plaintiff has been and will be deprived of income in the form of wages, health and dental insurance benefits, pension and retirement benefits, social security benefits, disability and life insurance benefits, paid holiday and vacation benefits, workers' compensation and unemployment compensation benefits, and other benefits, promotion opportunities and job assignments earned by the Plaintiff, but denied because of her age in amounts to be proven at trial.

## COUNT III
### AGE DISCRIMINATION UNDER THE PHRA

93.   Plaintiff incorporates the preceding allegations of her Complaint as though fully

set forth herein at length.

94.     The actions described above also constitute unlawful discriminatory practices prohibited by the PHRA.

95.     Plaintiff is entitled to the relief authorized by the PHRA.

## COUNT IV
## DISABILITY DISCRIMINATION UNDER THE PHRA

96.     Plaintiff incorporates the preceding paragraphs of her Complaint as though fully set forth herein at length.

97.     The actions described above also constitute unlawful discriminatory practices prohibited by the PHRA.

98.     Plaintiff is entitled to the relief authorized by the PHRA.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the Court to enter a judgment in favor of the Plaintiff and against the Defendant, as set forth below:

A.     Declaring that MLH violated the ADEA, the ADA and the PHRA, and has done so willfully;

B.     Granting Plaintiff an injunction permanently restraining and enjoining MLH, and each of its agents, successors, employees, independent contractors and other representatives from engaging in or continuing to engage in any employment acts, policies, practices or procedures which may discriminate, in purpose or impact, against any present or former employee of MLH on the basis of age, disability or perceived disability;

C.     Awarding Plaintiff actual damages for loss of revenue, including back pay, future earnings, pension and other retirement benefits, liquidated damages, prejudgment interest, and all the fringe benefits to which Plaintiff may be entitled, in amounts to be proven at trial;

D.      Awarding Plaintiff her costs and reasonable attorney's fees against MLH;

E.      Awarding such other relief as may be just an appropriate under the circumstances.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

**GAREN MEGUERIAN, ATTORNEY AT LAW, LLC**

January 11, 2016

By: **Garen Meguerian, Esquire**
PA ID No. 78588
21 Industrial Boulevard, Suite 201
Paoli, Pennsylvania, 19301
gm@garenmlaw.com
(610) 590-2176
Attorney for Plaintiff
Cathi Kandle

14