IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CATHI KANDLE | : | |
| --- | --- | --- |
| | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 2:16-cv-00135-JS |
| v. | : | |
| | : | |
| MAIN LINE HEALTHCARE | : | JURY TRIAL DEMANDED |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

## FIRST AMENDED COMPLAINT

Plaintiff Cathi Kandle, by way of her First Amended Complaint against Defendant Main Line Healthcare ("MLH" or "Defendant"), hereby states:

## INTRODUCTION

1. Ms. Kandle brings this action to redress MLH's violation of the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§621, *et seq.*), the Americans with Disabilities Act ("ADA" – 42 U.S.C. §12112, *et seq.*), and, the Pennsylvania Human Relations Act ("PHRA" – 43 P.S. §951, *et seq.*). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION

2. This action is brought under the ADEA, ADA, and the PHRA.

3. This Court's jurisdiction over Plaintiff's ADEA and ADA claims is based on 29 U.S.C. §626(c) and 28 U.S.C. §1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

4. Plaintiff seeks relief for her ADEA and ADA claims pursuant to 29 U.S.C. §626(b) and (c)(1).

1

5. This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. §1367(a).

## VENUE

6. Venue lies in the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. §1391(b) and (c).

## NATURE OF THE PROCEEDING

7. This is a proceeding for damages related to the unlawful termination of Plaintiff's employment.

8. Plaintiff seeks redress for her losses, including: (a) back pay; (b) front pay; (c) liquidated damages; (d) declaratory and injunctive relief, requiring, *inter alia*, that Defendant reinstate the Plaintiff; (e) lost benefits; (f) compensatory damages under applicable state law; (g) reasonable attorney's fees and costs; and (h) such other relief as may be necessary to secure to the Plaintiff the right hereafter to be free of employment discrimination on account of age, disability or perceived disability.

## PARTIES

9. Defendant MLH is a Business Corporation organized and existing under the laws of Pennsylvania, with its principal place of business at 2 Industrial Boulevard, Suite 400, Paoli, Pennsylvania, and additional places of business in Pennsylvania, including: at Lankenau Hospital, in Wynnewood, PA; Bryn Mawr Hospital, in Bryn Mawr, PA; and Paoli Hospital, in Paoli, PA.

10. Defendant MLH was Plaintiff's employer until March 28, 2014, when MLH terminated Plaintiff's employment.

11. Plaintiff is an adult individual and lives in West Chester, Pennsylvania.

12. Plaintiff's date of birth is October 30, 1950; at the time that MLH terminated her employment, Plaintiff's age was 63.

## FACTUAL BACKGROUND

13. Prior to the termination of her employment by MLH, Ms. Kandle had worked at Lankenau Hospital for approximately 30 years, in various roles throughout her career.

14. Ms. Kandle was employed by MLH, at Lankenau, from January 1, 2010 until March 27, 2014; Ms. Kandle had been employed with Defendant's predecessor (Cardiovascular Associates of Southeastern PA "CASEP") since April 2009.

15. MLH acquired CASEP during Ms. Kandle's employment with that group.

16. Until the termination of her employment by MLH, Plaintiff's formal job title was "surgery scheduler."

17. In 2013, her last full year of employment at Lankenau, Plaintiff's wages, as reported on her Form W-2 Wage and Tax Statement, equaled $41,780.93.

18. Ms. Kandle was qualified for the job of "surgery scheduler."

19. Ms. Kandle had performed the job of "surgery scheduler" for many years and had received positive performance evaluations, including an assessment that she was a "top performer" who "consistently exceeds expectations in terms of quality of work" and "always produces accurate results."

20. Ms. Kandle was credited with "consistently behav[ing] in a professional manner and maintain[ing] the standards of MLH."

21. Ms. Kandle was assessed to be "an independent worker who is very well liked by both her peers and the physicians. She does not get involved in office politics and is always willing to help out in all areas of the office. She is a definite asset to MLH."

22. Ms. Kandle was regarded as highly credible by her supervisors: "Cathi tells the truth unless doing so would jeopardize someone else's safety or privacy. She tells the truth about her behavior, motives or belief unless doing so would clearly be inappropriate due to the audience or the surroundings."

23. Ms. Kandle was also credited for her willingness to accommodate the needs of her employer: "Cathi is very flexible, with excellent ability to handle change with minimal disruption. She always displays an excellent attitude toward change."

24. Given that Ms. Kandle was working to schedule surgeries for cardiac patients, empathy towards those patients' needs was of paramount importance, and Ms. Kandle was praised for her interactions with patients: "[t]he patients really like Cathi. She listens to them and helps them find answers to their questions. The physicians know they can depend on her to do a thorough job."

25. Ms. Kandle's performance evaluations included positive assessments of her contributions, including that she is "very kind and understanding with the patients and is very sensitive to their needs."

26. On or about August 29, 2013, MLH informed Plaintiff that it was restructuring Plaintiff's job functions, and, starting on September 1, 2013, she would be moved from the offices of the physicians with whom she had worked for many years, and into the "LMC Heart Group / Access Center."

27. Ms. Kandle would be working in a call center and answering calls from any patients that called any one of 36 cardiologists, including electro-physiologists and cardiac surgeons.

28. Ms. Kandle had never met or interacted with most of these physicians.

29. She had no experience in working for them and did not have any knowledge of their office procedures or how they scheduled patients.

30. In her prior role as a "surgery scheduler", Ms. Kandle had worked closely with the cardiologists located in Suite 356 of the Lankenau Medical Building, scheduling both invasive and non-invasive procedures.

31. MLH deliberately misled Ms. Kandle by maintaining her job title as "surgery scheduler" – even though Ms. Kandle's job would no longer involve scheduling surgeries.

32. Upon initially entering the call center, Ms. Kandle was placed at a desk with a telephone connected to a headset, which she was expected to wear while answering calls eight hours / day.

33. Despite the fact that Ms. Kandle had not, during her entire career, answered calls from random patients, MLH failed to provide any training to Ms. Kandle when it first moved her into the call center.

34. MLH had also apparently failed to fully advise the physicians of the impact of moving their schedulers into the call center, as many of these physicians expressed their disappointment and frustration at the move, including to Ms. Kandle.

35. Some physicians went so far as to apologize to patients for being directed to the call center, and formally complained to MLH about the new organization.

36. Many patients, spurred by MLH physicians, began refusing to speak with the employees in the call center and demanded to be connected with their physicians' offices.

37. MLH directed Ms. Kandle to lie to patients who called into the call center, looking for their specific physicians' offices.

38. Ms. Kandle was told to give patients the impression that they had reached their

5

doctors' offices.

39. After enduring months of complaints by patients, MLH advised Ms. Kandle and other call center employees to state that they were working for all physicians, but were simply housed in a different location.

40. Patients reacted very negatively to this, and some patients disparaged Ms. Kandle and other call center employees by referring to them as "K-Mart operators", or "customer service center" employees.

41. Although Plaintiff's job title remained "surgery scheduler", from the time of her move into the call center until the termination of her employment, Plaintiff was not asked to schedule a single surgical procedure.

42. Instead, Plaintiff was asked to endure an environment of hostility, where it soon became evident to Plaintiff that MLH intended to terminate her employment because of her age, and was looking for any justification to do so.

43. Upon her move to the call center, Ms. Kandle reported to a new manager, Kimberly Ellis.

44. In one of her first interactions with Ms. Kandle, Ms. Ellis asked Plaintiff if she planned on retiring soon.

45. Ms. Ellis also directed Ms. Kandle to lie to patients about not being in the call center, and when Ms. Kandle initially refused, Ms. Ellis criticized Ms. Kandle stating that she "was not creating the magic in MLH."

46. To force Ms. Kandle to quit, MLH changed the rules and procedures seemingly without rhyme or reason, and criticized Ms. Kandle for not adhering to these rules.

47. Ms. Ellis also began to "paper" Ms. Kandle's employment file with alleged

infractions of MLH's policies, again, as a means of giving false justification for the eventual termination of Ms. Kandle's employment.

48. To make matters worse, the call center was located in a room without adequate ventilation, and Ms. Kandle – along with numerous other workers in the call center – began experiencing health issues.

49. Ms. Kandle began to suffer from serious upper respiratory infections, and, as a result, Ms. Kandle complained to MLH, through her direct supervisor Ms. Ellis, about the safety of the environment in the call center.

50. MLH retained an outside consultant whose first name is "Irene" to address issues raised by Ms. Kandle and other workers at the call center.

51. Irene interviewed Ms. Kandle, and rather than taking Plaintiff's concerns seriously, she dismissed them, and came to the incorrect conclusion that Ms. Kandle was suffering from Chronic Obstructive Pulmonary Disease (COPD).

52. Irene confronted Ms. Kandle and essentially blamed Ms. Kandle, rather than the unsafe environment, for her health issues.

53. After the interview with the outside consultant, Ms. Kandle reported her concerns to Ms. Ellis, including Irene's dismissive attitude and her conclusion that Ms. Kandle was suffering from COPD.

54. Unfortunately, Ms. Ellis was equally dismissive of Ms. Kandle's complaints.

55. Since being moved into the call center, Ms. Kandle had sought medical treatment for her upper respiratory infection, and was advised by her physician that MLH should clean the air ducts in the call center.

56. Ms. Kandle, who had just returned from her doctor's appointment, reported her

physician's recommendation to Ms. Ellis, and, once again, Ms. Ellis was dismissive of Ms. Kandle.

57. Within several weeks of Ms. Kandle's report to Ms. Ellis, MLH terminated Ms. Kandle's employment.

58. Ms. Kandle's employment was terminated on March 28, 2014.

59. The reason for termination was pretextual.

60. Ms. Ellis had criticized Ms. Kandle for using a form of transmission also used by Ms. Kandle's co-workers.

61. Neither Ms. Kandle nor her co-workers were ever trained that this method was improper, yet Ms. Ellis singled Ms. Kandle out for criticism.

62. When Ms. Kandle complained to Ms. Ellis that she felt that Ms. Ellis was singling her out for criticism, Mr. Ellis responded by threatening Ms. Kandle's job: "Cathi, if you bring this up to me again, you will be terminated."

63. Ms. Kandle was terminated the following day.

64. Ms. Kandle would have been eligible for a pension had she remained employed until June 2014.

65. Upon information and belief, Ms. Kandle's position remained available and MLH filled the position with someone substantially younger than Plaintiff.

66. The reasons provided by MLH for the termination of Plaintiff's employment are false and pretextual, and Ms. Kandle was advised by physicians at MLH to "**not** let this go."

67. Respondent terminated Plaintiff because of her age.

68. Respondent terminated Plaintiff because it perceived Plaintiff to be suffering from a disability, specifically COPD.

69. On or about July 8, 2014, within the time prescribed by 29 U.S.C. §626(d) of the ADEA, Plaintiff filed her Charge of Discrimination with the EEOC against the Defendant.

70. The Charge was dual filed with the Pennsylvania Human Relations Commission.

71. The EEOC initially misplaced the Charge, and did not locate it for processing until April 2015, when it incorrectly noted that the Charge was received on April 13, 2015, instead of July 8, 2014.

72. The EEOC subsequently corrected its error.

73. On or about September 15, 2015, Plaintiff submitted an amended Charge, simply to correct the name of the Defendant, which had been incorrectly identified in the original Charge.

74. The amended Charge correcting the name of the Defendant was accepted by the EEOC.

75. The EEOC issued a "right to sue" letter to Plaintiff on November 12, 2015.

76. Plaintiff has exhausted her administrative remedies, and has promptly initiated her lawsuit in this Court.

### COUNT I
### Violation of the Age Discrimination in Employment Act

77. Plaintiff incorporates the preceding paragraphs of her complaint as though fully set forth herein at length.

78. Commencing on or about August 2013 and continuing until March 28, 2014, Defendant MLH intentionally and willfully engaged in a pattern and practice of unlawful acts in violation of the ADEA. These practices were part of a systematic and concerted effort to gradually rid itself of the obligations to pay health and retirement benefits for older employees, and to replace its older workers, including its surgery schedulers like Ms. Kandle, with younger

employees.

79. At all relevant times hereto, Plaintiff has been above the age of 40 and is a member of a protected class under the ADEA.

80. Plaintiff was qualified to continue working for MLH.

81. Upon information and belief, MLH's restructuring of the jobs of its surgery schedulers reflected, in both purpose and effect, a blatant and willful pattern of age discrimination.

82. MLH engaged in an ongoing pattern and practice of age discrimination, beginning with the restructuring of Plaintiff's job functions and ending in the termination of Plaintiff's employment.

83. As a result of MLH's policies and practices, Plaintiff suffered adverse consequences and was unjustly and discriminatorily deprived of equal employment opportunities because of her age.

84. MLH retaliated against Ms. Kandle when Ms. Kandle complained about disparate treatment, including by terminating Plaintiff's employment.

85. As a further result of MLH's actions, Plaintiff has been and will be deprived of income in the form of wages, health and dental insurance benefits, pension and retirement benefits, social security benefits, disability and life insurance benefits, paid holiday and vacation benefits, workers' compensation and unemployment compensation benefits, and other benefits, promotion opportunities and job assignments earned by the Plaintiff, but denied because of her age in amounts to be proven at trial.

86. Plaintiff is now suffering, and will continue to suffer, irreparable injury from MLH's policies and practices as set forth herein.

## COUNT II
### Violation of the Americans with Disabilities Act

87. Plaintiff incorporates the preceding paragraphs of her Complaint as though fully set forth herein at length.

88. MLH terminated Plaintiff's employment because it perceived Plaintiff to be suffering from a disability – COPD.

89. MLH believed, wrongly, that Plaintiff suffered from a physical impairment that is not transitory and minor.

90. MLH retaliated against Plaintiff when Plaintiff complained of disparate treatment, including by terminating Plaintiff's employment.

91. As a result of MLH's policies and practices, Plaintiff suffered adverse consequences and was unjustly and discriminatorily deprived of equal employment opportunities because of her perceived disability.

92. As a further result of MLH's actions, Plaintiff has been and will be deprived of income in the form of wages, health and dental insurance benefits, pension and retirement benefits, social security benefits, disability and life insurance benefits, paid holiday and vacation benefits, workers' compensation and unemployment compensation benefits, and other benefits, promotion opportunities and job assignments earned by the Plaintiff, but denied because of her age in amounts to be proven at trial.

## COUNT III
### AGE DISCRIMINATION UNDER THE PHRA

93. Plaintiff incorporates the preceding allegations of her Complaint as though fully set forth herein at length.

94. The actions described above also constitute unlawful discriminatory practices

prohibited by the PHRA.

95. Plaintiff is entitled to the relief authorized by the PHRA.

## COUNT IV
## DISABILITY DISCRIMINATION UNDER THE PHRA

96. Plaintiff incorporates the preceding paragraphs of her Complaint as though fully set forth herein at length.

97. The actions described above also constitute unlawful discriminatory practices prohibited by the PHRA.

98. Plaintiff is entitled to the relief authorized by the PHRA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a judgment in favor of the Plaintiff and against the Defendant, as set forth below:

A. Declaring that MLH violated the ADEA, the ADA and the PHRA, and has done so willfully;

B. Granting Plaintiff an injunction permanently restraining and enjoining MLH, and each of its agents, successors, employees, independent contractors and other representatives from engaging in or continuing to engage in any employment acts, policies, practices or procedures which may discriminate, in purpose or impact, against any present or former employee of MLH on the basis of age, disability or perceived disability;

C. Awarding Plaintiff actual damages for loss of revenue, including back pay, future earnings, pension and other retirement benefits, liquidated damages, prejudgment interest, and all the fringe benefits to which Plaintiff may be entitled, in amounts to be proven at trial;

D. Awarding Plaintiff her costs and reasonable attorney's fees against MLH;

E. Awarding such other relief as may be just an appropriate under the circumstances.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

GAREN MEGUERIAN, ATTORNEY AT LAW, LLC

February 5, 2016

By: Garen Meguerian, Esquire
PA ID No. 78588
21 Industrial Boulevard, Suite 201
Paoli, Pennsylvania, 19301
gm@garenmlaw.com
(610) 590-2176
Attorney for Plaintiff
Cathi Kandle